## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2016, 6:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kara A. Hancuff
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott Giles, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | March 29, 2016 <br><br> Court of Appeals Case No. <br> 53A01-1508-CR-1244 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Marc R. Kellams, Judge <br><br> Trial Court Cause No. <br> 53C02-1410-FC-1018 |

**Brown, Judge.**

[1]     Scott Giles appeals his sentence for forgery and theft as class C felonies. Giles raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

*Facts and Procedural History*

[2]     Richard Wells employed Giles for ten years as a property manager maintenance technician for Richard Wells Rentals. Between August 1, 2013, and June 30, 2014, Giles stole various checks from Wells. Giles then filled out those checks, signed Wells's name to them without any authority, and cashed the checks. The largest check cashed was for $1,500. Giles ultimately stole a total of $189,000 from Wells during that period of time.

[3]     On October 27, 2014, the State charged Giles with forgery and theft as class C felonies. On July 20, 2015, the court held a hearing, and Giles pled guilty as charged. The court explained that the two charges were considered an episode of criminal conduct and that the maximum sentence could not exceed the advisory sentence for a felony which is one class higher than the most serious of the felonies charged, or ten years.

[4]     Giles testified that he "used the money to, um, procure materials that I needed for work, um, with his business," but admitted that most of the money was taken for his own benefit. Transcript at 10. When asked what he did with the money, Giles stated: "Um, provided for my family, gave them whatever they

wanted [inaudible]." *Id.* at 11. The court accepted the pleas and entered judgment of conviction under each count.

[5] The trial court then proceeded to a sentencing hearing. Giles stated: "I wish I'd never done it. Um, but I kind of lost my mind in that – that point in time and I understand that it really destroyed my life at this point." *Id.* at 12-13. He testified that Wells was good to him for the ten years that Wells employed him. The court then told Giles to turn around and tell Wells that face to face, and Giles then stated:

> Mr. Wells, you were good to me for the ten (10) years I worked for you and my grief got the best of me and I'm sorry for, uh, jeopardizing your health and your job. Um, I wish I could do it over, I would do much better by you.

*Id.* at 13.

[6] Giles testified that he spent all the money and that he had nothing to show for it. When asked by his counsel whether he tried to procure some funds to pay Wells back, Giles testified that he went to a couple of banks looking for a loan but they would not give him a loan because his credit was not good, and "[a]lso, they told me I had to get an account with them." *Id.* Giles stated that he was working and wanted to start paying back the money at the rate of at least $100 per month. When asked by his counsel regarding how much he would pay if he acquired a second job, Giles stated: "Then even more, um, up to hopefully two hundred, if more. I, I do have child support, um, I'm supporting my child and two other children that are my wife's." *Id.* at 14.

[7] Giles asked that he serve any time on home detention and stated: "I just don't want to be separated from my family. I want to work and get this taken care of and do my time and just get back to being normal again and not having to worry about this stuff." *Id.* at 15. The court observed that it would take 157.5 years to pay off the amount stolen at $100 per month. The prosecutor argued for the maximum aggregate sentence of ten years and emphasized that Wells had to defer his retirement, the discovery of the theft caused him serious illness and a heart attack, and there is no way that Giles would ever pay the money back during Wells's life or even after his death.

[8] The court noted that Giles was forty years old and had no prior criminal history and no drug and alcohol involvement, and that the Indiana Risk Assessment System showed him as a low risk to re-offend. The court found that it was an aggravating factor that Wells was at least sixty-five years of age, "in fact, in excess of that, sufficiently to really aggravate the circumstances."[1] *Id.* at 17. Giles's counsel then stated:

> I was just going to mention one other thing and, um, that is that unlike many people we deal with Mr. Giles has never denied that he did this. He has – he's wanted a plea agreement this whole time and obviously none is coming. He has admitted to it practically from the start. Even admitted to it under oath in another trial in which he was the victim.

---

[1] According to his victim impact statement, Wells was eighty-six years old.

*Id.*

After a recess, the court stated:

> Well, there's a number of ways to look at this situation, Scott. Um, first, as the prosecutor looked at it, and as is reasonable to look at it, you had a victim of advanced years, and you stole a lot of money. This wasn't just a couple hundred dollars, this is thousands and thousands of dollars, which, although I'm never sure what the Court of Appeals will do, I believe, because it's such an outrageously large amount of money, would justify a maximum sentence. Then you look at it from the prospective [sic] of you have no prior criminal history, um, and you pled guilty which saved the State and the victim the requirement of going through a trial, which is deserving of some consideration.

*Id.* at 19-20. The court stated that "[i]t is a serious – it is a serious crime and the victim was greatly harmed as a result and it demands I believe, um, a term of incarceration." *Id.* at 21-22. The court sentenced Giles to eight years for each count and ordered the sentences to be served concurrent with each other.

## *Discussion*

The issue is whether Giles's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Relief is available if, after due consideration of the trial court's sentencing decision, this court finds that in our independent judgment, the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). "[A]ppellate review should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Hines*, 30 N.E.3d at 1225 (quoting *Cardwell*, 895 N.E.2d at 1224).

[11] Giles argues that the maximum sentence on each count was inappropriate. He asserts that he accepted responsibility for his conduct, has no prior criminal history, supports his wife's two children and plans to adopt them, and is current on his child support obligations with respect to his biological son. He also argues that he is unlikely to commit another crime and is likely to respond positively to probation or short-term imprisonment. He points to his testimony that he was employed at a new job and would make payments to Wells of at least $100 per month.

[12] The State argues that Giles's theft was almost twice the threshold amount for theft as a class C felony, that the offense occurred over a period of several months and involved 224 stolen checks, and that Wells believes he must work into his nineties in order to recoup the stolen funds. The State also contends that, while Giles does not have a criminal history, his character is such that he is willing to violate the trust and abuse the generosity of his elderly employer. It also asserts that Giles's guilty plea is likely a pragmatic decision based on the fact that there were 224 checks made out to him in his handwriting.

[13] To the extent that Giles argues he received the maximum sentence on each count, we observe that he received the maximum sentence for each count,[2] but not the maximum aggregate sentence. At the guilty plea hearing, the trial court explained that the two charges were considered an episode of criminal conduct and that the maximum sentence could not exceed the advisory sentence for a felony which is one class higher than the most serious of the felonies charged, or ten years. At the time of the offenses, Ind. Code § 35-50-1-2 provided in part:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which

---

[2] At the time of the offenses, Ind. Code § 35-50-2-6 provided that "[a] person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years."

is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Thus, assuming that the offenses constituted an episode of criminal conduct as stated by the trial court,[3] Giles could have been sentenced to a maximum sentence of ten years, which is the advisory sentence for a class B felony, the felony one class higher than the class C felonies with which Giles was charged. Accordingly, we cannot say that Giles received the maximum aggregate sentence.

[14] Our review of the nature of the offense reveals Giles worked for Wells for ten years and that between August 1, 2013, and June 30, 2014, he stole various checks from Wells, filled them out, and cashed them. The largest check Giles cashed was for $1,500. During the period of eleven months, Giles stole a total of $189,000, which corresponds to an average of $17,181.81 per month. According to Wells's victim impact statement, Wells was charged fees and penalties from different businesses that had not received their automatic payments because Giles had depleted his account. Most of the money was stolen from a combined operating account and retirement account, it will take Wells nearly five years of operating his business to recover the stolen funds, and he was eighty-six years old at the time of sentencing. Wells also stated that he believed the realization of the amount of money stolen led to his heart attack on

---

[3] At the time of the offenses, Ind. Code § 35-50-1-2(b) provided that an "'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance."

October 2, 2014, and that Giles was a trusted worker for ten years and lived rent free for years in a $600 per month house.

[15] Our review of the character of the offender reveals that Giles pled guilty almost nine months after being charged and has no prior criminal history. Giles reported that he has a nine-year-old son and is current with his obligation to pay ninety-three dollars per week in child support. The presentence investigation report ("PSI") indicates that Giles reported that he has two stepchildren and that he voiced a desire to eventually adopt them. Giles reported that he has smoked marijuana no more than one to two times per week. The PSI indicates that his overall risk assessment score placed him in the low risk to reoffend category. According to Wells's victim impact statement, the house where Giles had been staying was inspected on December 2, 2014, and Giles's white cat was found starving inside the house, the side door was ajar, and the house "was a total mess." Appellant's Appendix at 32. Wells also asserted that Giles had not vacated the premises since receiving a letter in October 2014 instructing him to do so and that he had failed to pay the water, electric, and gas bills.

[16] After due consideration of the trial court's decision, and in light of the repeated withdrawals and amount of the loss, we cannot say that the aggregate sentence of eight years is inappropriate in light of the nature of the offense and the character of the offender.

## *Conclusion*

[17] For the foregoing reasons, we affirm Giles's sentence.

[18]     Affirmed.

Kirsch, J., and Mathias, J., concur.